357 So.2d 442 (1978)
James W. GEIGER and Duval Teachers United, an Unincorporated Labor Organization, Appellants,
v.
DUVAL COUNTY SCHOOL BOARD, Appellee.
No. DD-464.
District Court of Appeal of Florida, First District.
March 30, 1978.
Rehearing Denied May 3, 1978.
*443 William H. Maness, Jacksonville, for appellants.
Dawson A. McQuaig, William Lee Allen, Jacksonville, for appellee.
MELVIN, Judge.
Appellants-defendants seek review of a final judgment entered in favor of appellee-plaintiff (Duval County School Board). Plaintiff sought an injunction to restrain James W. Geiger and Duval Teachers United from engaging in certain activities in connection with the efforts of the defendants to obtain a teachers' contract with Duval County School Board that would be acceptable to defendants.
After considering extensive testimony offered by the parties the court entered its final judgment, and we think it to be beneficial to set forth pertinent portions thereof:
"The Court makes the following findings:
"1. This action and the companion consolidated action 76-9208-CA arose out of a threatened illegal strike by members of Duval Teachers United by reason of the failure of the parties to agree upon a contract for the current school year.
"2. At the time of the filing of this action and of the counterclaim, the defendant Duval Teachers United was the exclusive bargaining agent for teachers and teachers aides in the Duval County School System and the defendant James W. Geiger was president of that organization.
"3. In the companion consolidated action, case No. 76-9208-CA, the Court entered an order on September 8, 1976, which is still in force and effect, containing the following:
"`3. Until the further order of the Court, the parties shall continue to operate under the expired agreement with regard to wages, insurance, dues deductions and mail service, provided that the defendant Duval Teachers United, its members, representatives and all other persons are restrained and enjoined from using the inter-office mails for the school system or the bulletin board at any school or office building of the school system for the publication or dissemination of any writings, posters or other documents containing any critical, caustic, scurrilous or abusive matter of or concerning the School Board, its members, the Superintendent of public schools and negotiators or for urging or encouraging any teacher or other employee of the school system to strike or absent himself or herself from the assigned post of duty of such person.'
"4. At the time this action was filed, the Duval County School Board had established the following regulation or policy with regard to meetings and visitations by representatives of Duval Teachers United with teachers:

*444 "`MEETINGS AND VISITATION
"`DTU members may hold meetings before or after the teachers' normal work assignment on campus, provided such meetings do not conflict with other school activities or assigned duties of teachers.
"`Representatives of the DTU may visit with teachers at school locations before or after school or during the lunch period, insofar as such visits shall not conflict with other school activities or assigned duties of teachers. DTU representatives may visit school locations at other times subject to the approval of the school Principal or the Assistant Superintendent for Personnel.
"`In any event, DTU representatives shall report their presence to the Principal at the time of entry on school premises.'
"5. In the `Interim Order' entered in this action on October 12, 1976, the Court made (and hereby confirms) the following findings:
"`(a) Beginning September 30, 1976, and continuing through October 7, 1976, members and representatives of the Duval Teachers United have visited many schools in Duval County on the pretense or pretext that they had come to talk with teachers about the `issues in collective bargaining' or to distribute materials.
"`(b) In some instances, prior notice or information was given to one or more T-V stations by the Duval Teachers United representative as to the time of the visits, and on such occasions T-V cameras and T-V personnel were present when the representatives arrived.
"`(c) In substantially all instances, the principal of the particular school has offered a suitable room or office to the representatives of Duval Teachers United for a meeting and offered to cooperate in giving teachers notice of the meeting, but the Duval Teachers United representatives have defiantly and arbitrarily gone to the teachers' lounge over the objection of the principal; or, having gone into the teachers' lounge without the principal's knowledge, the Duval Teachers United representatives have refused to leave the lounge. Police were called and arrests were made in more than fifteen instances.
"`(d) Representatives of Duval Teachers United have been accompanied on their visits to the schools by labor representatives from Massachusetts, New York, Pennsylvania, Illinois and Tallahassee. Their defiant attitudes, the police cars, the T-V cameras and the arrested persons being led through the halls and (in some cases) through lines of students have created an intolerable situation which is detrimental to pupil and teacher alike.
"`(e) Since the entry of the injunction on October 1, 1976, the Duval Teachers United representatives have not attempted `to take over any space' in a school. They have merely acted arbitrarily and irresponsibly by insisting on going into and remaining in teachers' lounges in opposition to the school principals. As a consequence, they are not in contempt, but the injunction should be broadened to prevent further such conduct.'
"6. Many teachers in the school system are not members of the defendant union, and the lounges in the schools are used by union and non-union teachers alike for eating, smoking and drinking beverages which teachers are not permitted to do in other areas of school buildings and lounges are not appropriate places for the carrying on of union activities.
"Upon consideration, it is ORDERED AND ADJUDGED:
"I. The representatives of Duval Teachers United have the right to contact, visit and meet with teachers on and in school premises before and after school hours and during lunch periods, provided the same do not conflict with assigned duties of teachers or other school activities.

*445 "II. Duval Teachers United and its representatives have the right to use school mails and bulletin boards in schools as provided in and subject to the prohibitions contained in paragraph 3 of the order of this Court set forth in paragraph 3 above.
"III. Any representative of Duval Teachers United who goes on school premises or into a school building for the purpose of contacting, visiting or meeting with teachers is required to so notify the Principal or other person in charge, and upon being notified, the Principal or other person in charge is required to designate a suitable room or office for the representative to confer with teachers, and shall immediately post or permit the representatives to post on the bulletin board and at the entrance to the teachers' lounge a notice of the time and location of the meeting or conference.
"IV. There is no right to and the defendants James W. Geiger, Duval Teachers United, its members, agents, representatives or any person acting therefor, are restrained and enjoined from going on or in the school premises, offices, or buildings of the Duval County School System and from using school mails for the purpose of distributing any writings, posters or other documents containing any critical, caustic, scurrilous or abusive matter of or concerning the School Board, its members, its negotiators and the Superintendent of public schools, and from going into any office or room in any such building, except such room or other space as is designated by the principal or other person in charge as herein provided.
"V. The Court retains jurisdiction to enforce and modify this judgment."
Further insight into the problems surrounding the School Board and the Duval Teachers United in their efforts (or lack thereof) to bargain in good faith toward the entry of a contract may be found in the opinion of this court in Duval Cty. Sch. Bd. v. Florida Public Emp., 353 So.2d 1244 (Fla. 1st DCA 1978), in which we sustained the order of the Public Employees Relations Commission finding that the Duval County School Board had committed unfair labor practices in violation of applicable law in failing to engage in collective bargaining in good faith. So, we have here a situation in which, to say the least, it may be fairly said that the activities of the plaintiff and defendants fall short of the mark of leadership that the public, in all fairness, has a right to expect of its School Board and the union representing the Duval County teachers.
This appeal presents the basic issue of whether the final judgment here reviewed violates First Amendment rights vested in the Duval Teachers United and its members to communicate on school property, in a particular manner and at a particular place.
The Duval Teachers United has been duly selected as the exclusive bargaining agent for the Duval County Teachers. The Duval County School Board has the authority and responsibility, under the laws of Florida, to provide the facilities and the educational programs for the public schools of said county. Neither has the right to use any of the facilities of the school grounds, school buildings or related school properties as an arena to "slug out" their differences, which, under the law, should be settled in good faith around a conference table by those who have come with an open mind and with a purpose to negotiate with the view of reaching a just and equitable agreement considering the rights of all involved, as well as the question of finances reasonably available.
Let the parties here, and all in similar position, take heed of the obvious. The reason for the existence of school boards, educational facilities, colleges of education, supervisory and instructional personnel, union and non-union activity, is to afford, in an appropriate atmosphere, educational opportunities to the children of Florida. To this end, parents and non-parents yearly contribute of their earnings in the knowledge that the fate of this Government, the welfare and security of its citizens will soon come to rest in the hands of young citizens either educated and prepared to accept such *446 responsibility, or uneducated and unprepared. Certainly under the First Amendment rights enjoyed by adults, students likewise are protected to the extent of having the right to speak and to learn uninterrupted by the type activity described in the trial court's finding of fact.
In Connecticut S. Fed. of Teachers v. Bd. of Ed. Members, 538 F.2d 471 (2d Cir.1976), the Court of Appeals considered the complaint of a minority teachers union. The substance of the complaint was that the appellees' policy relating to teachers' unions has the practical effect of extending an advantage to the teachers' union that represented the majority of the teachers with the result that the minority union's constitutional rights under the First Amendment were impermissibly trespassed upon. We have already noted in the case here considered that there is but one union involved and that union is the exclusive bargaining agency for the teachers in Duval County. The constitutional questions, however, we perceive fall in the same broad category. We pause here to note that while school boards must meet a burden of justification in order to enforce a regulation that touches upon a teacher's First Amendment rights, the mere assertion in a complaint that the teacher's First Amendment rights have been infringed upon does not put the School Boards to the test. Before such test requirements may be placed upon a School Board, it is encumbent upon the teacher or teacher group to first establish that their first Amendment rights have, as a matter of fact, been imposed upon by policies adopted by the School Board. Connecticut S. Fed. of Teachers v. Bd. of Ed. Members, supra, at 479.
In a capsule, the complaint of the Duval Teachers United is that the policy of the Duval County School Board and the judgment here reviewed infringe upon their constitutional rights by placing a limitation upon the use, by Duval Teachers United and its representatives, of the school mailboxes, bulletin boards and a limitation upon the representatives of the union in visiting with the teachers in any place other than the room or area designated by the principal of the school. It is to be noted that the principal of the school, when notified by a representative of the Duval Teachers United of a desire for space to meet with its teacher members, is required to designate a suitable room or office for such conference, and is further required to immediately post appropriate notice on the bulletin board and the entrance to the teachers' lounge as to the location and time for such meeting or conference.
Now, let us examine the First Amendment claim to rights of the Duval Teachers United to use the school mailbox facilities or to use the teachers' lounge as a place for distribution of material or for a conference with teachers. In Connecticut S. Fed. of Teachers v. Bd. of Ed. Members, supra, the court dealt with this subject and pointed out that school mailboxes, bulletin boards and meeting rooms that were sought to be used by the union, in that case, were not a public forum or available generally to the public. In no particular manner do they compare to a street, park, sidewalk or other places that are almost daily used in the exercise of First Amendment rights. The court pointed out at page 481 that school mailboxes and bulletin boards are used for the primary purpose of internal communication among the teachers and other instructional personnel in school related subjects, and then pointedly stressed, at page 481:
"... The boards have no constitutional obligation per se to let any organization use the school mailboxes, bulletin boards, or meeting rooms, to communicate its views to the teachers, ... whether or not the subject-matter of the communication is school-related. Since the facilities are not ordinarily open to the public, access to them for the purpose of engaging in First Amendment activities may be denied altogether... ." (Emphasis supplied)
In view of this court's disposition of paragraph four of the final judgment, we observe that the judgment does not preclude, in any way, reasonable availability of alternative means of communication and *447 distribution between the teachers and/or their union for discussion of educational matters or union activities or whatever they may be pleased to discuss before and after school, and during lunch periods. Further, the judgment requires the Board to furnish them a suitable meeting place. In view of our determination that Duval Teachers United has no First Amendment rights to the use of the school mailbox facilities, bulletin boards, or lunchroom, it follows that the provision granting the union the right to use such facilities but with limitation is not subject to First Amendment attack as made upon it.
The provisions of paragraph four of the final judgment must be vacated and set aside as constituting a First Amendment infringement upon the rights of the members of the Duval Teachers United and various teachers in the school system. The broad language employed in this paragraph would prevent teacher to teacher contact and teacher to teacher conversation concerning the administration that might be considered less than complimentary and viewed as sharp in their characterizing of attitudes of administration personnel.
The final judgment appealed from is affirmed with the exception of paragraph four and the provisions of such paragraph are disapproved. The judgment is reversed with directions to eliminate paragraph four of the final judgment.
Affirmed in part and reversed in part.
SMITH, Acting C.J., and ERVIN, J., concur.