374 So.2d 1386 (1979)
Sandor KOLTAY, T/a City T.V., Petitioner,
v.
DIVISION OF GENERAL REGULATION, DEPARTMENT OF BUSINESS REGULATION, Respondent.
No. 78-556.
District Court of Appeal of Florida, Second District.
May 18, 1979.
*1387 Charles R. Scully, St. Petersburg, for petitioner.
Mary Jo M. Gallay, Staff Atty., Dept. of Business Regulation, Tallahassee, for respondent.
HOBSON, Acting Chief Judge.
Petitioner, Sandor T. Koltay, seeks review of a final order of the Division of General Regulation, Department of Business Regulation which revoked his electronic service dealer registration. The problem confronting us in this case is whether the Director of the Division of General Regulation erred in rejecting the hearing officer's findings of fact and recommended order. We hold that the Director was in error.
An amended notice to show cause was filed against petitioner alleging that:
1. Petitioner refused to allow inspection of records of service transactions as requested by an electronic inspector-investigator, Mr. Stanley T. Crocker, on or about May 13, 1977, in violation of Florida Statute 468.158.
2. Petitioner knowingly made an untrue and misleading statement to John K. Kyle, on or about May 6, 1977, to the effect that the filaments of the picture tube in RCA color TV model GR 661-S, serial number XXXXX-XXXX, Chassis 39XBJ, were open and that it needed a "new" picture tube, in violation of Florida Statute 468.159(1)(a).
3. Petitioner knowingly replaced the RCA type 25VABP22 picture tube, code date 72-48, in RCA color TV model GR 661S, serial number XXXXX-XXXX, Chassis 39XBJ on or about May 5, 1977 with a Grade C (used) Montgomery Ward Airline Type 25 VABP22, marked EIA 274, when the original tube was not defective and replacement was not necessary to effect the proper repair, in violation of Florida Statute 468.159(1)(d).
4. Petitioner knowingly charged for and applied a cleaning agent to the VHF tuner of the above specified TV on or about May 5, 1977, when in fact the tuner did not need cleaning to effect the proper repair, in violation of Florida Statute 468.159(1)(d).
5. Petitioner presented to John K. Kyle, on or about May 6, 1977, invoice no. *1388 4180, which is illegible in violation of Rules and Regulations 7B-2.10.
6. Petitioner knowingly inserted false and misleading information on invoice no. 4180 presented to John K. Kyle, on or about May 6, 1977, to the effect that the picture tube installed was a "Silvertone" when in fact it was "Montgomery Ward-Airline" brand; that dealer has "contract" for "two years guarantee on this picture tube towards grade C  one year labor (between customer and us only)" the effect of which was intended to mislead the customer to believe that this was a quality tube; that the focus tube installed was a "1V2" when in fact it was a "2AV2", in violation of Florida Statutes 468.158, 468.159(1)(a), (b) and (f) and Rules and Regulations 7B-2.15.
7. Petitioner failed to notify the Division of a change of home address, on or about June 1, 1976, in violation of Florida Statute 468.155.
The Division of Administrative Hearings by its designated hearing officer then held a public hearing in the case.

HEARING OFFICER'S FINDINGS OF FACT
In substance, the hearing officer found that the Electronic Registration Bureau received complaints about the quality of petitioner's workmanship. With the assistance of the Consumer Affairs Division of Pinellas County, Division of General Regulation employees marked a five year old RCA color television set and placed it in a citizen's home for repair. Prior to being given to the citizen, the set was checked by three Division employees who were subsequently qualified as experts in the area of electronic repairs. These experts removed the tubes from the set, placed them in a cathode-ray tester and recorded the data. During the examination, the filaments were closed and there was continuity in the picture tube. All tubes were marked when removed from the set. The focus tube was removed and scientifically knocked out to get a "no picture" condition.
The Division initially gave the set to a citizen who lived outside the area serviced by petitioner. The set was then moved to the home of a Pinellas County resident, Mr. Kyle, whose home was in petitioner's service area. Kyle called petitioner, who came to his home to examine the set. Kyle explained to petitioner that the set had no picture and might need a new picture tube. Petitioner examined the set for approximately 15 to 20 minutes and stated that the set probably required a new picture tube. Kyle was given estimates on several brands of picture tubes. Kyle instructed petitioner to use the best picture tube and received a quote of $210 for a Silvertone tube.
Petitioner carried the set to his shop and replaced the tube with a Grade C (used) Montgomery Ward Airline tube. Petitioner testified that he conducted a "spark" test and determined that the original tube was defective. After installing the new tube, the set would not play and he then checked the focus tube which he replaced. The set operated properly and was returned to the owner. Petitioner admitted that he used a 1V2 focus tube as opposed to a 2AV2 tube (as stated on the invoice) because they are interchangeable. He also cleaned the TV tuner at no charge.
Later on the same day, after the set was returned to Kyle, a deputy executed an affidavit, obtained a search warrant and confiscated the original picture tube from petitioner's shop. A certified electronic technician checked the original picture tube and testified at the hearing that it had consistent readings of 11.9. New picture tubes show readings of from 11.5 to 12. He further testified that in his extensive experience, he had never witnessed an intermittent filament problem (as claimed by petitioner) in a set of this type. Expert Division witnesses also testified that intermittent filament problems in sets such as the one repaired by petitioner are so rare as to be nearly nonexistent.
An expert witness testified on behalf of petitioner and stated that in his 30 years in the electronic repair business he had *1389 worked on many RCA picture tubes and had seen numerous "open" filament or intermittent problems in such tubes. He testified that intermittent problems are especially likely in cases where the set is five years old because the average tube life span is five to seven years. He expressed doubts as to the accuracy of the 11.9 reading. He also stated that there was no way to determine whether or not an intermittent problem existed unless the problem occurred while the technician was present.
Other witnesses testified that petitioner had repaired their TV sets and they felt that he was reliable, honest and trustworthy.
During the year prior to the hearing, agents of the Division visited petitioner's home and demanded to inspect his invoices and other operating receipts. Harsh words were exchanged, and petitioner refused the demand. The next day he and his wife telephoned the Division office in Tampa and headquarters in Tallahassee. He was advised to carry his invoices and receipts to the Tampa office, which he did.
Petitioner had been in the electronic repair business for seven years and had approximately fifteen years experience in the field. He took basic electronic courses but was not a certified electronic technician.
The hearing officer's recommended order contained the following conclusions:
1. There was a one-day delay in the Division's ability to inspect petitioner's records as requested.
2. Petitioner replaced the picture tube based on his examination which revealed that a filament in the tube was open, causing an intermittent problem. Both petitioner and respondent testified that an intermittent problem is one which is not apparent and cannot be traced.
3. Allegations as to petitioner's untrue and misleading statements regarding the need for a new picture tube were not established by competent and substantial evidence nor was the allegation substantiated that petitioner knowingly replaced the tube when he was aware that it was not defective. As to the cleaning of the TV tuner, evidence revealed that no charge was made.
4. Petitioner has a poor handwriting on the invoice but the invoice is readable.
5. There is no requirement that petitioner notify the Division of a change of home address as alleged. Petitioner's registration contains his business address and was available to the Division at all times.
6. Petitioner installed a Montgomery Ward Airline brand picture tube in the set as alleged in count 6 of the order to show cause.
The final recommendation from the hearing officer assessed petitioner a civil penalty of $250 based on the installation of the Montgomery Ward picture tube.
The Director of the Division of General Regulation reviewed the entire transcript of the case and rejected certain parts of the recommended order as not being based on competent and substantial evidence.

AGENCY'S FINDINGS OF FACT
The Agency found that the picture tube in question was in good working order when tested before and after petitioner's repair job. It was good when tested in Mr. Kyle's home prior to being repaired.
Petitioner initially stated that the filaments were "open" rather than intermittent. Petitioner went to Mr. Quibelle (his expert witness at the hearing) several days after the tube was confiscated. Quibelle never saw the tube, but nevertheless testified that he had personally seen intermittent problems occur and, for lack of a better reason, would often assume that it was an intermittent filament. He doubted the accuracy of the 11.9 reading from a five year old tube; however, previous expert testimony had revealed that the TV set used in the test was a rarely-used piece of equipment.
There was substantial and competent evidence that the picture tube in question was not intermittent. There was no substantial and competent evidence that 1V2 and 2AV2 focus tubes were interchangeable.
*1390 The Division's final order contained the following conclusions of law:
1. There was substantial and competent evidence that petitioner made untrue and misleading statements that the filaments in the picture tube were open and that the set needed a new tube. The filaments were not intermittent and the picture tube was in good working order.
2. Petitioner knew or had knowledge imputed to him that the original picture tube was good when he told Mr. Kyle that it was defective.
3. Petitioner knowingly inserted false and misleading information on the invoice to the effect that he installed a 1V2 focus tube when in fact it was a 2AV2 tube.
4. Petitioner installed a Montgomery Ward brand tube instead of a Silvertone tube as quoted in his estimate.
The final order revoked petitioner's electronic dealer registration.
Section 120.57(1)(b)9, Florida Statutes, provides:
9. The agency may adopt the recommended order as the agency's final order. The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the recommended order, but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. The agency may accept or reduce the recommended penalty in a recommended order, but may not increase it without a review of the complete record... .
In conformance with this statute, the Director set out with particularity the rejected facts which she considered were not based on substantial competent evidence. Further, the increased penalty was imposed after a review of the entire record. We find no fault with the form of the final order. This leaves us the task of evaluating the weight accorded certain facts by the hearing officer and the agency.
We are spared the dilemma described in McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977) by virtue of the guidelines set down in that case. Our sister court in that instructive opinion, recognized that reviewing courts are often placed in the position of weighing facts relied on by the hearing officer as against agency findings of facts which produce a result different from the recommended order.
We elect to utilize the McDonald test which states in pertinent part:
In determining whether substantial evidence supports the agency's substituted findings of fact, a reviewing court will naturally accord greater probative force to the hearing officer's contrary findings when the question is simply the weight or credibility of testimony by witnesses, or when the factual issues are otherwise susceptible of ordinary methods of proof, or when concerning those facts the agency may not rightfully claim special insight.
* * * * * *
At the other end of the scale, where the ultimate facts are increasingly matters of opinion and opinions are increasingly infused by policy considerations for which the agency has special responsibility, a reviewing court will give correspondingly less weight to the hearing officer's findings in determining the substantiality of evidence supporting the agency's substituted findings.
* * * * * *
Thus, the substantiality of evidence supporting an agency's substituted finding of fact depends on a number of variables: how susceptible is the factual issue to resolution by credible witnesses and other evidence, how substantially the hearing officer's discarded findings are supported by such evidence, how far the factual issue tends to be one of opinion, *1391 how completely agency policy occupies a field otherwise open to different opinion.
346 So.2d 569, at 579.
With this standard in mind, we look to the final order in the case before us to determine why the Division Director rejected the facts relied on by the hearing officer. It is clear that the Director reviewed both sides of the issue and simply placed more weight on the testimony of agency witnesses. No reasoning was offered in the final order which might lead us to the conclusion that agency policy considerations were the primary factor. The Director set out the conflicting facts and then selected the position that appeared more credible in her judgment.
This leads us to the inescapable conclusion that the Division Director simply did not believe petitioner and his witness and was persuaded that the agency's witnesses were telling the truth. This is not within the purview of the Director's permissible review. The problem with this procedure is the same problem that faces an appellate court when reviewing a case of conflicting evidence. We are cautioned repeatedly to refrain from substituting our interpretation of the facts for that of the trial judge or jury who were personally able to evaluate the testimony and demeanor of the witnesses. Shaw v. Shaw, 334 So.2d 13 (Fla. 1976). The same caveat applies to a Division Director when reviewing a hearing officer's recommended order. Venetian Shores Home and Property Owners v. Ruzakawski, 336 So.2d 399 (Fla. 3d DCA 1976). That court specifically stated, and we agree, that there is no provision in the Florida Administrative Procedure Act which suggests that the agency should make a new judgment upon the evidence.
We therefore grant the petition for review, quash the final order and remand the cause to the Division of General Regulation for entry of an order consistent with the hearing officer's findings of fact.
SCHEB and RYDER, JJ., concur.