404 So.2d 1156 (1981)
CITY OF CLEARWATER (FIRE DEPARTMENT), Appellant,
v.
John J. LEWIS, III, International Association of Fire Fighters, Local 1158, and the Public Employees Relations Commission, Appellees.
No. 80-1715.
District Court of Appeal of Florida, Second District.
October 21, 1981.
*1157 Frank Kowalski, Chief Asst. City Atty., Clearwater, for appellant.
Rodney W. Smith, Gainesville, for appellees Lewis and International Association of Fire Fighters, Local 1158.
Vernon Townes Grizzard and N. Sherrill Newton, Tallahassee, for appellee Public Employees Relations Commission.
GRIMES, Judge.
The City of Clearwater seeks review of a determination by the Public Employees Relations Commission (PERC) that it committed an unfair labor practice with respect to the termination of one of its employees.
The city was charged with violating section 447.501(1)(a) and (b), Florida Statutes (1977), by refusing to permit John J. Lewis, III, to consult with a union representative at a meeting which resulted in his termination of employment. After the taking of testimony, a hearing officer made the following pertinent findings of fact. The city hired Lewis as a probationary fire fighter on February 14, 1977, and continued him as a probationary employee at all times during his employment. On February 15, 1978, Chief Pitts and Assistant Chief King called him into the chief's office. The chief told him that it was necessary to terminate his employment and gave as one of the reasons several of his performance evaluations. Chief Pitts gave him the option of resigning or being dismissed. The chief had decided to terminate Lewis before the meeting but called the meeting in order to review the performance evaluations with him and to give Lewis the option of resignation in order to protect his employment record. Lewis asked Chief Pitts if he could think over the choices and speak to the union. The chief told Lewis that the decision to terminate him had already been made and that consultation with a union representative would not change the decision. Lewis then signed a resignation form which the chief's secretary had prepared in advance.
In his recommended order, the hearing officer observed that Chief Pitts could not deny Lewis the right to the presence of a union representative at the interview simply because Lewis occupied a probationary status. He also pointed out that Lewis had made a valid request for representation. *1158 However, the hearing officer concluded that the chief had not refused Lewis the right to have a union representative present, because he merely told Lewis that it wouldn't change his decision, and Lewis then decided to forego his right to representation and sign the resignation papers.
PERC adopted the hearing officer's findings of fact with one exception not pertinent to this review.[1] However, by a split decision, PERC concluded that on these facts the city had committed an unfair labor practice by continuing the meeting after Lewis had requested union representation. PERC reasoned as follows:
When Lewis was initially ordered to report downtown, and at the outset of the meeting with Chief Pitts, he had no indication of what was to transpire, and no reason to believe he might be disciplined. Thus, he had no reason to request union representation at that point. But when the Chief presented Lewis with the option of resigning or being dismissed, he posed a choice which Lewis could reasonably have believed might have significant adverse impact on his job interests and employment record. For example, whether Lewis resigned or was dismissed may well have been dispositive of his right to grieve under the collective bargaining agreement in effect between the parties. § 447.401, Fla. Stat. (1979); see generally Leon County CTA v. Leon County School Board, 6 FPER ¶ 11001 (1979). Second, Lewis' right to appeal under civil service was likewise implicated, a right which may also have depended on whether Lewis attained permanent employee status by the time of the meeting with Chief Pitts. § 447.401, Fla. Stat. (1979). Thus, the alternative of resignation, while protecting Lewis' employment record from the possible stigma of a dismissal, might have foreclosed the possibility of his remaining on the job by challenging successfully the grounds for his dismissal.
These employment interests were at stake as Lewis contemplated the alternatives presented him by the Chief. To request union representation when making that choice, is we believe, "to engage in concerted activities not prohibited by law, for the purpose of... mutual aid or protection." § 447.301(3), Fla. Stat. (1979). As the United States Supreme Court stated in an analogous situation in NLRB v. Weingarten, Inc., 420 U.S. 251, 260-61, 95 S.Ct. 959, 965, 43 L.Ed.2d 171 (1975), this is true even though the employee alone may have an immediate stake in the outcome:
The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly. The representative's presence is an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview. (Footnote omitted.)
All employees have an interest in knowing that they may request the presence of a union representative should they be confronted with the option of resigning or being dismissed.
After being offered the option of resigning or being dismissed, Lewis asked to contact the union. The Hearing Officer did not find as a fact that Lewis ever withdrew his request for union representation. *1159 As the Hearing Officer analyzed the case, the fact that Lewis remained and signed resignation papers after the Chief told him the presence of a union representative would not change anything implies that Lewis decided to waive his request. The Commission disagrees with the Hearing Officer's analysis on this point.
In another context, the Commission has held that waiver must be "clear and unmistakable." Palowitch v. Orange County School Board, 3 FPER 280, 282 (1977), aff'd, 367 So.2d 730 (Fla. 4th DCA 1979). With regard to this question, a commentator has written:
Before inferring that a waiver has occurred ... the Board must assure itself that the employee acted knowingly and voluntarily. The right being waived is designed to prevent intimidation by the employer. It would be incongruous to infer a waiver without a clear indication that the very tactics the right is meant to prevent were not used to coerce a surrender of protection.
Comment, "Union Presence in Disciplinary Meetings," 41 U.Chi.L.Rev. 329, 350 (1974) (cited by United States Supreme Court in NLRB v. J. Weingarten, Inc., supra). For the reasons discussed below, the Commission concludes that the factual circumstances of this case do not demonstrate such a "clear and unmistakable" waiver.
The Commission has not disturbed the Hearing Officer's finding of fact that "Chief Pitts did not refuse the Charging Party permission to contact the union or have a union representative present" at the interview. Nevertheless, after Lewis once made a request for union representation, the Chief avoided a direct response, continued the meeting without responding to Lewis' request, and told Lewis that representation would not change anything. Under these circumstances, the Commission concludes that Lewis' failure to persist in his request for union representation does not constitute a "clear and unmistakable" waiver of representation. Accord, Southwestern Bell Telephone Co., 227 NLRB 1223 (1977).
In Seitz v. Duval County School Board, 4 FPER ¶ 4154 (1978), rev'd in part on other grounds, 366 So.2d 119 (Fla. 1st DCA 1979), the Commission adopted the rationale of NLRB v. J. Weingarten, Inc., supra, thus guaranteeing to public employees the right to union representation in an investigatory or disciplinary interview if an employee has a reasonable belief that disciplinary action may result from the interview. The instant case is somewhat different from factual situations governed by the Weingarten case. Lewis' request for union representation was prompted not by apprehension that he might be disciplined, as was the case in Weingarten and Seitz, but by his concern that significant adverse consequences would result from the choice between resignation and dismissal. In both situations, however, the right to union representation arises from the Section 447.301(3) right to act for "mutual aid or protection." Once the right to representation attaches, and a request is made, the duty of the public employer is the same.
Forthright guidelines for the future conduct of public employers, public employees, and employee organizations can best be provided by implementing this right to union representation in the following manner: When a public employer offers an employee an option to resign or be dismissed at a meeting with the employer, and the employee requests union representation, the employer is permitted one of three alternatives.[[2]]
(1) grant the request; (2) discontinue the meeting; or (3) offer the employee the choice of continuing the meeting unaccompanied by a union representative or having no meeting at all.

*1160 An employer may not continue the meeting in the absence of requested union representation unless the employee voluntarily and expressly agrees to remain unrepresented after the employer presents the employee with the choices mentioned in alternative (3) above. See United States Postal Service, 241 NLRB No. 18 (1979). An employer, under alternative (2) above, retains the right to revoke the option of resignation, discontinue the meeting, and dismiss the employee in accordance with his previous decision to terminate the employee's employment.
The Commission is satisfied that neither the letter nor the spirit of this requirement was observed in the instant case. Chief Pitts did not grant Lewis' request for union representation, did not discontinue the meeting, and did not offer Lewis the choice of continuing the meeting unaccompanied by a union representative or having no meeting at all. Instead, Chief Pitts, having proposed the option of resignation, told Lewis that the presence of a union representative would not do him any good, since the decision to terminate Lewis' employment either by dismissal or by Lewis' resignation had already been made. In so conducting this meeting, Chief Pitts engaged in an unfair labor practice in violation of Section 447.501(1)(a), Florida Statutes (1979).
(Footnotes omitted.) PERC revoked Lewis' resignation and ordered the city to present him with the option of resigning or being dismissed effective retroactively to February 15, 1978.
The city raises two points which merit discussion. First, it contends that PERC erred in concluding that an employee has a right to union representation at a non-investigatory meeting at which he is simply given the option to resign or be dismissed. It also argues that PERC improperly overruled the hearing officer's finding that Lewis had waived his right to union representation when there was evidence in the record to support the findings. We will treat the points in the order stated.
In NLRB v. J. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975),[3] the court considered whether the denial of an employee's request to have a union representative present during an interview concerning the employee's suspected theft constituted an unfair labor practice. The Supreme Court reversed the court of appeals and reinstated a determination by the National Labor Relations Board that the action of the employee in seeking to have the assistance of a union representative at the conference with his employer fell within the wording of the National Labor Relations Act which provides that employees have the right to engage in concerted activities for the purpose of mutual aid and protection.[4] The Court upheld NLRB's construction that an employee has a right to have union representation at an interview where he reasonably believes that the investigation will result in disciplinary action.
On the other hand, the NLRB has recently held that an employee has no right to union representation at a meeting with his employer held solely for the purpose of informing the employee of a previously determined disciplinary decision. Baton Rouge Water Works, 246 NLRB 161 (1979).[5] At the same time the Board stated:
We stress that we are not holding today that there is no right to the presence of a union representative at any "disciplinary" interview. Indeed, if the employer engages in any conduct beyond merely informing the employee of a previously made disciplinary decision, the full panoply *1161 of protections accorded the employee under Weingarten may be applicable.
Id. at 7.
PERC's order goes beyond Weingarten because PERC adopted the hearing officer's finding that Chief Pitts had made up his mind to fire Lewis before the meeting. Therefore, the meeting was not an investigatory interview which might result in disciplinary action as contemplated by Weingarten. On the other hand, Chief Pitts' meeting with Lewis was something more than one to advise Lewis of a predetermined decision to fire him because the chief was also offering Lewis the option to resign. In the words of PERC, Lewis' request for union representation was prompted "not by apprehension that he might be disciplined" but rather "by his concern that significant adverse consequences would result from a choice between resignation and dismissal." PERC reasoned that in both situations the entitlement to union representation arose from the statutory "right to act for `mutual aid and protection.'"
PERC Commissioner Parrish in his partially dissenting opinion in this case made the argument that Lewis was not entitled to the Weingarten type of protection when he said:
Suffice it to say that on the facts in this case the Charging Party did not have a statutory right to the presence of a union representative at his termination meeting. The Charging Party was not forced to participate in an investigatory interview. Nor was he forced to disclose any information or take any action which was inimical to his job interests or to those of his fellow employees. The decision to terminate his employment had been made prior to the meeting and the meeting was held solely for the purposes of advising Lewis of the termination, advising him of the reasons for the termination, and advising him that he had an opportunity to resign in lieu of being terminated.
Had the Charging Party been "forced" to choose between termination or resignation I might view this case otherwise. However, there is nothing in the findings of fact upon which to conclude that Respondent in any way coerced or intimated the Charging Party into signing a resignation document. Obviously Lewis was faced with a hard choice, but a hard choice is better than none at all. Further, it strains logic to conclude that an employer, by giving an employee an option to which the employee has no legal entitlement, thereby creates a situation in which the employer is vulnerable to a charge that it has deprived an employee of a right. It cannot be doubted that an option to resign in the face of certain termination can often be an option much sought after and desired by employees, and it is predictable that as a result of the majority's formulation of an interpretation of Section 447.301(3), Florida Statutes (1979), which exposes employers to Weingarten-type liability for offering their employees an opportunity to resign, such opportunities will become quite scarce in the future.
In reaching our decision, this court must first determine whether to independently decide if the Florida Public Employees Labor Relations Act gives an employee the right to union representation at an interview in which he is given the option to be fired or resign or whether to accept PERC's determination that he has such a right. Reference to the act suggests that we should defer to the Commission. The statement of policy expressly charges PERC with "promoting harmonious and co-operative relationships between government and its employees, both collectively and individually." § 447.201, Fla. Stat. (1977). It was specifically created to "assist in resolving disputes between public employees and public employers." § 447.201(3), Fla. Stat. (1977). In remedying unfair labor practices, it is entitled to order such action "as will best implement the general policies expressed in this part." § 447.503(6)(a), Fla. Stat. (1977). These provisions indicate a legislative intent to delegate to PERC a range of discretion within *1162 which to make policy determinations necessarily involved in the interpretation and application of the "mutual aid and protection" guarantee set forth in section 447.301(3). Thus, an expert tribunal such as PERC is entitled to substantial deference in recognition of its special competence in dealing with labor problems. It is not our province to displace its choice between two conflicting views simply because we would have been justified in deciding the issue differently were it before us in the first instance. See Pasco County School Board v. PERC, 353 So.2d 108 (Fla. 1st DCA 1977).
PERC was making policy when it determined that the Weingarten protections are applicable to situations in which an employee is given an option to resign or be fired. Commissioner Parrish persuasively suggests that the adoption of this policy may result in fewer employees being given the option to resign. On the other hand, an employee's decision to resign rather than be fired can affect his substantial rights,[6] and the advice of a union representative who is knowledgeable in these matters is likely to result in a more informed decision. Since there is a reasonable basis for the policy established by PERC in this case which is consistent with the philosophy of chapter 447, we will not disturb it. Cf. School Board v. PERC, 399 So.2d 520 (Fla. 2d DCA 1981), in which this court overturned a PERC order deemed to be arbitrary and out of harmony with the Public Employees Labor Relations Act.
We also agree with PERC's contention that it did not improperly overrule the hearing officer's findings of fact on waiver. PERC simply held that the facts as found by the hearing officer did not constitute a waiver by Lewis of his right to union representation. Even Commissioner Parrish agreed that Lewis' action of continuing with the meeting and ultimately signing the resignation did not constitute a clear and unmistakable waiver of his right to union representation. To the extent that the determination of whether a waiver occurred could be considered to be a question of fact, it is the kind of factual issue on which an agency has more discretion to overrule a hearing examiner in the implementation of agency policy. Thus, in McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977), the court wrote:
In determining whether substantial evidence supports the agency's substituted findings of fact, a reviewing court will naturally accord greater probative force to the hearing officer's contrary findings when the question is simply the weight or credibility of testimony by witnesses, or when the factual issues are otherwise susceptible of ordinary methods of proof, or when concerning those facts the agency may not rightfully claim special insight.
At the other end of the scale, where the ultimate facts are increasingly matters of opinion and opinions are increasingly infused by policy considerations for which the agency has special responsibility, a reviewing court will give correspondingly less weight to the hearing officer's findings in determining the substantiality of evidence supporting the agency's substituted findings.
Thus, the substantiality of evidence supporting an agency's substituted finding of fact depends on a number of variables: how susceptible is the factual issue to resolution by credible witnesses and other evidence, how substantially the hearing officer's discarded findings are supported by such evidence, how far the factual issue tends to be one of opinion, how completely agency policy occupies a field otherwise open to different opinion.
Id. at 579.[7] Given the fact that an employee under these circumstances has the right to union representation once he makes the request, PERC also had the authority to *1163 establish a standard for the waiver of this right which is somewhat akin to that required for the waiver of counsel in criminal cases.[8]
Accordingly, we deny the petition for review.
SCHEB, C.J., and DANAHY, J., concur.
NOTES
[1] Clearwater's probationary period for firemen is one year. Since the interview took place one day after Lewis had worked for a year, there was some question concerning his probationary status. Therefore, PERC modified the hearing officer's findings to eliminate the determination that Lewis was still on probationary status. As modified, the findings reflected that Lewis was employed by the city and that as of his termination the city had taken no formal personnel action to change his designation from probationary to permanent. The city quarrels about this but cites us no authority for the proposition that Lewis' right to the advice of a union representative (as contrasted to his right of tenure) was different depending on whether he occupied a probationary or permanent employment status. See § 447.203(3), Fla. Stat. (1977).
[2] In a footnote PERC pointed out that the National Labor Relations Board had first formulated these alternatives in the context of investigatory or disciplinary interviews citing Roadway Express, Inc., 246 NLRB 180 (1979); United States Postal Serv., 241 NLRB 18 (1979); General Elec. Co., 240 NLRB 66 (1979).
[3] In interpreting Florida's Public Employees Labor Relations Act, decisions construing similar provisions of the National Labor Relations Act are persuasive but not binding. Pasco County School Bd. v. PERC, 353 So.2d 108, 116 (Fla. 1st DCA 1977).
[4] The Florida Public Employees Labor Relations Act contains similar language. § 447.301(3), Fla. Stat. (1977).
[5] The Fifth Circuit Court of Appeals has approved the rationale of Baton Rouge Water Works in Anchortank, Inc. v. NLRB, 618 F.2d 1153 (5th Cir.1980).
[6] In addition to those outlined in PERC's order, Lewis' decision to resign may have had a very real impact upon his right to claim unemployment compensation. See § 443.06, Fla. Stat. (1977).
[7] We adopted these principles in Koltay v. Division of Gen. Reg., 374 So.2d 1386 (Fla. 2d DCA 1979).
[8] However, unlike the criminal procedures, we know of no authority which would require the employer to advise the employee of his right to union representation in the first place.