421 So.2d 645 (1982)
SCHOOL BOARD OF DADE COUNTY, Florida, Appellant,
v.
DADE TEACHERS ASSOCIATION, FTPNEA, and Public Employees Relations Commission, Appellees.
UNITED TEACHERS OF DADE, LOCAL 1974, AFT, Appellant,
v.
DADE TEACHERS ASSOCIATION, FTPNEA, and Public Employees Relations Commission, Appellees.
Nos. 81-2233, 81-2323.
District Court of Appeal of Florida, Third District.
October 26, 1982.
Rehearing Denied November 22, 1982.
*646 Haygood & Williams and Gerald A. Williams, West Palm Beach, for appellant School Bd.
du Fresne and du Fresne and Elizabeth J. du Fresne, Miami, for appellant United Teachers of Dade.
Frank & Kelly and Mark F. Kelly, Tampa, for appellee Dade Teachers Assn.
Edward S. Stafman, Jerry W. Cheatham, Tallahassee, for appellee Public Employees Relations Comn.
Before BARKDULL, HENDRY and BASKIN, JJ.
HENDRY, Judge.
Appellants, the Dade County School Board ("School Board") and the United Teachers of Dade ("UTD"), jointly challenge an administrative decision of the Florida Public Employees Relations Commission ("PERC") finding that they committed unfair labor practices against appellee Dade Teachers Association ("DTA"), UTD's rival union.
This dispute dates back to August, 1980. UTD was the certified bargaining agent for Dade County Teachers and had an agreement with the School Board which purported to grant it the "exclusive" right to solicit and organize teachers. When off-duty teachers supporting DTA began soliciting memberships for the union in school parking lots and by posting literature on school bulletin boards, UTD representatives, with the School Board's support, removed the DTA literature and the School Board, at the insistence of UTD, prohibited the DTA-affiliated teachers from soliciting other teachers in parking lots other than at their assigned schools. A School Board memorandum, circulated to all school principals, stated in pertinent part:
Bulletin Boards
Pursuant to Article XXVIII, Section 5 of the DCPS/UTD contract, at least one (1) bulletin board shall be reserved at an exclusive place in the employee's lounge for the exclusive use of UTD for purposes of posting material dealing with union business. Also, the union (UTD) shall be *647 allowed to post special union bulletins in the same location as is posted the employee sign-in sheet.
If there currently exists a separate, all-purpose bulletin board at a given work location on which individual employees post notices, this practice may continue. (However, minority/rival union materials may not be posted, pursuant to the exclusivity rights granted to UTD).
Solicitation
Pursuant to State Statutes and DCPS/UTD contract provisions, both the exclusive bargaining agent and individual employees have the right to solicit union membership. (Such solicitation is only permitted during duty-free time.)
UTD building stewards shall be allowed to conduct union business at duty-free times when not directly instructing students (pursuant to Article XXVIII, Section 3 of the DCPS/UTD contract).
Minority/rival union representatives are not permitted to solicit membership at DCPS work locations.
Access
The exclusive bargaining agent (but not a minority/rival union) shall be afforded access to DCPS work sites and grounds, including work location parking lots. Individual employees are afforded access to their own work sites and grounds (including parking lots), but not to other DCPS work sites unless they are at those sites on official DCPS business.
DTA filed unfair labor practice charges against the School Board and UTD under section 447.501(1)(a) and (2)(a), Florida Statutes (1979). The charges were consolidated and, following an evidentiary hearing, the PERC hearing officer issued a recommended order finding that (1) the School Board was justified in prohibiting teachers from soliciting at parking lots of other schools (on the theory they were "nonemployees" of such schools); and, (2) removal of DTA materials from all-purpose school bulletin boards was an unfair labor practice in violation of section 447.501(2)(a).
PERC's final order adopted the hearing officer's findings of fact, but determined that unfair labor practices had occurred with respect to both the bulletin board policy and the "other-school" parking lot policy. The question raised by this appeal is whether the two School Board rules are unfair labor practices within the definition of section 447.501(1)(a) and (2)(a). For the reasons set forth below, we find that both charges are well founded and affirm PERC's order.
The legislative statement of policy with respect to the Florida Public Employees Labor Relations Act provides that PERC was created to assist in resolving public labor disputes. § 447.201, Fla. Stat. (1979). PERC has developed special expertise in dealing with labor problems and is uniquely qualified to interpret and apply the policies enunciated in Chapter 447, entitling its decisions to considerable deference by this court. City of Clearwater v. Lewis, 404 So.2d 1156 (Fla. 2d DCA 1981); Pasco County School Board v. PERC, 353 So.2d 108 (Fla. 1st DCA 1977).
The unfair labor practice charges against the School Board and UTD in this case stem from section 447.501(1)(a) and (2)(a), which prohibits both public employers and employee organizations (unions), or their agents or representatives, from "[i]nterfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part." In construing these provisions, we are permitted to consider Federal labor law cases interpreting similar provisions of the National Labor Relations Act, 29 U.S.C. § 151 et seq., which PERC has frequently relied upon in establishing guidelines concerning solicitation and access disputes. City of Clearwater v. Lewis, supra; Okaloosa-Walton Junior College v. PERC, 372 So.2d 1378 (Fla. 1st DCA 1979), cert. denied, 383 So.2d 1200 (Fla. 1980); Pasco County School Board v. PERC, supra. Guaranteed the right to self-organize and bargain collectively by section 447.301 of the Act, public employees must also, of necessity, have the right to effectively communicate with one another regarding self-organization at the job site. *648 Okaloosa-Walton Junior College v. PERC, supra. Relying on private sector precedent, PERC has therefore adopted policies which provide that blanket no-access rules and rules which discriminate against one union in favor of another are presumptively invalid. See, e.g., Beth Israel Hospital v. NLRB, 437 U.S. 483, 492, 98 S.Ct. 2463, 2469, 57 L.Ed.2d 370, 380 (1978); NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956); Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945).
In Okaloosa-Walton Junior College v. PERC, supra, the court construed PELRA in light of applicable private sector precedent and held that, absent extraordinary circumstances, a public employer may not restrict the rights of employees to discuss organizational interests at the work site during the employees' nonwork time, nor restrict distribution of literature during nonwork time except where the actual work of public employees is performed. Id. at 1381. Here, the School Board's policy precluding, at all times and in all areas, employees (other than UTD agents) from one job site entering another job site for purposes of soliciting other employees for membership in an employee organization, is presumptively invalid. The burden thus was shifted to the School Board to demonstrate that the restrictions imposed on these legitimate employee organizational activities were justified. Where management attempts to restrict off-duty employee access to other employees for organizational purposes, these restrictions must be narrowly drawn to accomplish the employer's purpose without unnecessarily impinging upon employee rights. See Central Hardware Co. v. NLRB, 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972); NLRB v. Babcock & Wilcox Co., supra; McDonnell Douglas Corp. v. NLRB, 472 F.2d 539 (8th Cir.1973).
The "extraordinary circumstance" advanced by the School Board as justification for its restrictive access policy is the bare allegation of increased criminal activity on school campuses from outsiders entering school property. The School Board contended its solicitation/distribution policies are justified by the need to regulate access by outsiders to school campuses for security purposes. While sympathetic to the School Board's concerns for the safety of its students and teachers, we find that it has simply failed to show that a blanket no-access rule is the only means available, or even a reasonable means, of protecting this interest. No evidence was introduced to show that solicitation by employees from other campuses increased the schools' security problems. Indeed, the rule on its face permits solicitation by representatives of the majority union, indicating that the policy is designed to protect UTD's "exclusivity" rather than the safety of children, and is discriminatory in nature. (Although the School Board contends that security is hampered by unknown teachers at school parking lots, it does not suggest that UTD supporters are more easily recognizable than DTA advocates, thus undercutting "security interests" as a justification for the rule.) Additionally, while the school system has had increased crime problems in recent years, there is absolutely nothing in the record that ties these problems to school employees, much less teachers soliciting union membership, much less only teachers soliciting DTA union memberships. The presence of additional teachers in school parking lots after school hours would seem, if anything, to be a deterrent to crime. Even aside from the absence of any apparent connection between the rule and the "security goal," less intrusive means of satisfying the School Board's goals are plainly available, such as requiring all persons to check in with school officials prior to soliciting, or issuance of identification cards to teachers, thus allowing school officials to know who is on campus and why. The need for security does not itself justify the no-access rule if another rule which is less restrictive of employee rights would accomplish the same goal. See McDonnell Douglas Corp. v. NLRB, supra.
Similarly, appellants' defense of the bulletin board restriction is also unpersuasive. Appellants contend, in essence, that allowing DTA's supporters to use the employees' *649 general purpose bulletin board will endanger harmony and cause friction among employees. Aside from the irony of a union advancing such an argument, the argument clearly proves too much. For better or worse, the law  not to mention the First Amendment, see, e.g., Perry Local Educators' Ass'n v. Hohlt, 652 F.2d 1286 (7th Cir.1981), appeal filed sub nom., Perry Education Ass'n v. Perry Local Educators' Ass'n, 454 U.S. 1140, 102 S.Ct. 997, 71 L.Ed.2d 291 (1981)  allows public employees to communicate and solicit each other for collective bargaining purposes even though such conduct often leads to disharmony and friction. PERC found as a fact that "the problem arose not because of the materials or their content but because the UTD supporters, with the concurrence of the School Board, erroneously believed that the DTA supporters had no right to post the materials in question." For a government entity to enforce such a restriction, while simultaneously allowing teachers to use the bulletin board for other communications, constitutes censorship in its most direct form. See generally Dade County Classroom Teachers Ass'n, Inc. v. Ryan, 225 So.2d 903 (Fla. 1969).
Accordingly, we find PERC's interpretation and application of the statute to the facts of this case to be well within its range of discretion, see Board of Regents v. PERC, 368 So.2d 641 (Fla. 1st DCA), cert. denied, 379 So.2d 202 (Fla. 1979), and affirm the order in all respects.
Affirmed.
BARKDULL, Judge, concurring in part, dissenting in part.
I agree with the majority as to the invalidity of the "bulletin board rule" but I would reverse as to the "parking lot rule" and hold it valid. Geiger v. DuVal County School Board, 357 So.2d 442 (Fla. 1st DCA 1978); National Labor Relations Board v. Babcock & Wilcox Company, 351 U.S. 105, 100 L.Ed. 975, 76 S.Ct. 679 (1956); Diamond Shamrock Co., v. National Labor Relations Board, 443 F.2d 52 (3rd Cir.1971); National Labor Relations Board v. Great Atlantic & Pacific Tea Company, 277 F.2d 759 (5th Cir.1960); National Labor Relations Board v. Rockwell Manufacturing Company, 271 F.2d 109 (3rd Cir.1959).
The hearing officer made the following findings of fact and recommendations thereto:
B. Solicitation

5. Beginning in August, 1980, teachers began traveling to schools other than their assigned school, either before or after the regular duty day, for the purpose of soliciting memberships for the DTA. These solicitations usually occurred in the school parking lot.
6. Representatives of the UTD brought this fact to the attention of the School Board's administration.
7. On December 5, 1980, J.L. DeChurch, Association Superintendent, Bureau of School Operations, and Thomas A. Cerra, Assistant Superintendent, Office of Legislative and Labor Relations, issued a memo, hereinafter referred to as the DeChurch memo, to all School Board principals entitled: "UNITED TEACHERS OF DADE (UTD), OTHER EMPLOYEE ORGANIZATIONS, EMPLOYEE AND EMPLOYER RIGHTS." The memorandum focused on a number of issues such as U.S. mail, School Board mail service, work location mail boxes, bulletin boards, solicitation, access, and distribution of literature.
8. With regard to solicitation and access, the memo stated:
Solicitation
Pursuant to State Statutes and DCPS/UTD contract provisions, both the exclusive bargaining agent and individual employees have the right to solicit union membership. (Such solicitation is only permitted during duty-free time.)
UTD building stewards shall be allowed to conduct union business at duty-free times when not directly instructing students (pursuant to Article XXVIII, Section 3 of the DCPS/UTD contract).

*650 Minority/rival union representatives are not permitted to solicit membership at DCPS work locations.
Access
The exclusive bargaining agent (but not any minority/rival union) shall be afforded access to DCPS work sites and grounds, including work location parking lots. Individual employees are afforded access to their own work sites and grounds (including parking lots), but not to other DCPS work sites unless they are at those sites on official DCPS business.
9. At a December, 1980, membership meeting, Kino Barrowman, Executive Director of the DTA, informed those present of the DeChurch memo, and requested that all members comply with the memo. She also contacted various teachers and told them not to solicit at any schools other than their assigned school.
10. At no time before or after the issuance of the DeChurch memo has the School Board attempted to prohibit employees from soliciting memberships or distributing literature at their assigned schools during their duty-free time. The DTA has also continued soliciting memberships by utilizing the U.S. mail.
11. The DeChurch memo was issued in order to give guidance to administrators in the field concerning potential problems which may arise as a result of the growing rivalry between the UTD and the DTA. Specifically, the policy statement against solicitation at nonassigned work sites was included in the memo as a result of the School Board administration receiving reports that DTA members where (sic) engaging in solicitation at nonassigned schools without first checking in with the school principal. Serra and DeChurch felt that such a practice was in violation of the current collective bargaining agreement with the UTD, School Board Rule 1B-1.061 and Section 228.091, Florida Statutes (1979), concerning trespass on school property.
12. Rule 1B-1.061, promulgated on December 11, 1974, provides in pertinent part:
Parents and other persons who wish to visit the public schools should be routed to the school office, be greeted by the principal and furnished guide service. All visitors are to be made to feel welcome.
There shall be no solicitation of teachers or students on personal matters on the school premises by a sales persons or agents.
13. The School Board has one of the highest crime rates of any school system in the country. Persons not employed by the School Board have committed criminal acts against teachers and students on various School Board campuses.
14. The School Board does not issue any official indentification to its employees.
* * * * * *
A. Solicitation-Distribution

The central issue concerning the School Board's policy against employees soliciting and distributing literature at nonassigned work sites is whether the rules concerning employee solicitation/distribution apply or whether the rules concerning access to nonemployee organizers apply. This issue was considered by the Fifth Circuit Court of Appeals in NLRB v. Great Atlantic and Pacific Tea Company, 277 F.2d 759 (5th Cir.1960). There the employer contended that an employee who goes to one of the employer's chain stores in which the employee does not work should be treated as a nonemployee organizer for the purposes of applying the rules on access and solicitation/distribution. The court agreed noting that each store had its own management who hired and fired employees and that store management personnel could not distinguish between employees from other stores and members of the public, thus increasing the possibility of theft. Also of importance was the fact that the union had an alternate method of access to employees by use of the U.S. mail. Therefore, under these circumstances management's *651 security and property interests outweigh the employees' right to solicit at any work site of their choice.
A similar result was reached by a hearing officer for the New York Public Employees Relations Board in New York City Transit Authority, 3 PERB ¶ 4502, aff'd on other grounds, 3 PERB ¶ 3082 (1970). In applying NLRB v. A. & P. the Hearing Officer reasoned that employees who enter their own work site do so under the color of right because that is the location where they perform their job functions. Conversely, employees who go to nonassigned work sites to solicit do so for their own self-interest. Therefore, their right of access may be limited to their assigned work location.
In this case, the School Board's policy against solicitation and distribution by employees at campuses where they are not assigned is a permissible restriction on employee organizational activity. Similar to the facts in NLRB v. A. & P. the school employs a large number of instructional employees at numerous job sites. No official identifications are issued to School Board employees. Thus, it is difficult if not impossible for the administration at a particular school to distinguish between employees from other schools and members of the general public. These facts when taken into consideration with the School Board's high crime rate tip the balance in favor of the Board's restriction against unbridled access to nonassigned campuses by employee organizers.[7] Therefore, I recommend that the charge in Case No. CA-81-012 be dismissed.
* * * * * *
VII. RECOMMENDATION
I recommend that the Commission issue the following order:
A. Dismiss the charge filed by the DTA against the Dade County School Board in Case No. CA-81-012.
[7] In its brief, the DTA alleges that the School Board's policy is discriminatorily aimed at the DTA because solicitation at nonassigned work site for union membership occurred in past years. Most of the testimony in this regard related to solicitations that occurred prior to the passage of Part II of Chapter 447. Further, no evidence was offered to show that management was aware of these activities.
Therefore, I dissent from so much of the majority opinion that upheld the order of PERC as to the "parking lot rule" and would reverse with directions to PERC to enter the recommended order of the hearing officer sustaining the validity of this rule.