## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

CITIZENS FOR COLLIERVILLE, INC., )
A Tennessee Corporation, )
                        )
         Plaintiff/Appellant,    )   **Shelby Chancery No. 108591-1 R.D.**
                        )
VS.                        )   **Appeal No. 02A01-9707-CH-00142**
                        )
TOWN OF COLLIERVILLE, TN,    )
a municipal corp., HERMAN W. COX, )
JR., in his capacity as Mayor and    )
Member of the Board of Mayor and   )
Aldermen of the Town of Collierville, )
Tennessee, H. THOMAS BROOKS,   )
SIDNEY E. TURNIPSEED and JIMMY )
A. LOTT, in their capacities as     )
Members of the Board of Aldermen   )
of the Town of Collierville,        )
Tennessee and BAPTIST MEMORIAL )
HOSPITAL,                 )
                        )
        Defendants-Appellees.    )

FILED

February 6, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE NEAL SMALL, CHANCELLOR

**DAVID M. WALDROP**
**McNABB, HOLLEY & WALDROP, PLLC**
Memphis, Tennessee
Attorney for Appellant

**M. ANDERSON COBB, JR.**
**MICHAEL F. RAFFERTY**
**HARRIS, SHELTON, DUNLAP & COBB, L.L.P.C.**
Memphis, Tennessee
Attorneys for Appellee Baptist Memorial Hospital

**HOMER B. BRANAN, III**
**BRIAN L. KUHN**
**FARRIS, MATTHEWS, GILMAN, BRANAN & HELLEN, P.L.C.**
Memphis, Tennessee
Attorneys for Defendants-Appellees Town of Collierville,
Herman W. Cox, Jr., H. Thomas Brooks, Sidney E. Turnipseed
and Jimmy A. Lott

**AFFIRMED**


                                          **ALAN E. HIGHERS, J.**


**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

      Plaintiff/Appellant, Citizens for Collierville ("CFC") appeals from the order of the

Chancery Court of Shelby County, Tennessee, which declared valid the decision of the Board of Mayor and Aldermen of the Town of Collierville approving of Resolution 96-35 with respect to the application of Baptist Memorial Hospital ("BMH") for a planned development pursuant to the Town of Collierville's zoning ordinance. For reasons stated hereinafter, we affirm the judgment of the trial court.

On September 10, 1996, the Planning Commission ("Commission") met in special session to hear from those in support of and in opposition to the application of BMH for a hospital planned development. The Commission heard from BMH, the Town of Collierville planner Gary Barta, a consultant from ETI Corporation Ralph Smith, citizens opposed to the proposed planned development and citizens in support of said development.

On September 30, 1996, the Commission submitted their report and recommendation to the Board of Mayor and Aldermen. By a vote of 7-1, the Collierville Planning Commission recommended approval of BMH's planned development application to the Board of Mayor and Aldermen. The majority determined that the plan submitted by BMH was compatible with the low density residential housing in the area.

That same day, the Board of Mayor Aldermen debated the issue. As on September 10, 1996, a variety of opinions were expressed to the Board of Mayor and Aldermen concerning the proposed planned development . By a vote of 3-1, the Board of Mayor and Aldermen ultimately approved the amended plan of development:

> WHEREAS, the Board of Mayor and Aldermen of the Town of Collierville has determined that it is in the best interest of the citizens of the Town to develop the property located in Collierville and specifically described in Exhibit A attached, for a hospital and medical campus containing a mixture of hospital, office, residential and public uses, and which will be recognized as one of the finest medical facilities in the Memphis Metropolitan Area and in the entire Mid-South Region; and,
>
> WHEREAS, it has been determined that the only reasonable way to assure completion of such development in a coordinated, timely manner and in a way which causes minimum negative impact on the Town is through the designation of the project as a Planned Unit Development in accordance with Section 11 of the Zoning Ordinance of the Town; and,
>
> WHEREAS, application has been made for such a hospital and medical campus pursuant to Section 11 of the Zoning Ordinance of the Town; and,
>
> WHEREAS, the Planning Commission and the Board of Mayor and Alderman, reviewed the proposal in separate meetings and in a Public Hearing before the Board on September 30, 1996; and,

2

WHEREAS, at the conclusion of its meeting, the Board of Mayor and Aldermen approved the preliminary plan with conditions, which conditions are detailed in the attached Conditions of Approval.

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF MAYOR AND ALDERMAN OF THE TOWN OF COLLIERVILLE, TENNESSEE, THAT:

Section 1. The preliminary plans and attached Conditions of Approval be approved by the Mayor and Board of Alderman.

Section 2. Be it further resolved that the requirements of said aforementioned section of the Zoning Ordinance regulations shall be deemed to have been complied with; . . .

A complaint for issuance of writ of certiorari, injunctive relief and damages was filed by CFC on November 26, 1996. The Town of Collierville, Tennessee ("Collierville"), its Mayor, its Aldermen, Thomas Brooks, Sidney Turnipseed, and Jimmy Lott in their capacities as members of the Board of Aldermen, and BMH are defendants/appellees (collectively "Appellees") in this cause. Plaintiff, CFC, is a non-profit Tennessee corporation comprised of property owners in the immediate vicinity of the subject property. CFC was organized and chartered for the purpose of taking all necessary and appropriate community action in regard to matters involving the quality of life and the strengthening of residential neighborhoods in Collierville, Tennessee. Its primary purpose has been to oppose the re-zoning, or other change of use, of the residential property in Collierville. Particularly, CFC has opposed the proposed change of zoning of that property which is located at the northwest and northeast corners of Poplar Avenue ("Poplar") and Shea Road ("Shea") by the Town of Collierville or Shelby County Government to facilitate the development of a hospital or other commercial or Medical/Professional/Office use at such location. The record of the hearing before the Board of Mayor and Aldermen was certified to the Chancery Court of Shelby County. After reviewing the written proceedings, the chancellor held that the Board of Mayor and Aldermen's actions approving Resolution 96-35 with respect to the application of BMH for a planned development pursuant to Collierville's zoning ordinance were not arbitrary or capricious and that the record contained substantial and material evidence to support such action. This appeal ensued.

Appellant CFC has raised the following issue on appeal: Whether the trial court erred in finding that the Mayor and the Board of Aldermen of Collierville did not act illegally, arbitrarily or fraudulently under T.C.A. § 27-8-101 in approving BMH's application for a

3

planned unit development for a hospital and medical campus in accordance with Collierville's planned unit development zoning ordinance. Appellees Town of Collierville, Mayor, Board of Aldermen and BMH present the following additional issue: Whether CFC has standing to bring this action as an "adjacent or neighboring property owner who would be specially damaged" under T.C.A. § 13-7-208(a)(2).

## Whether CFC has standing to bring this cause of action.

We will first address Appellees' issue of standing discussed at length in its brief. Appellees argue that CFC lacks standing to pursue the instant claim under T.C.A. § 13-7-208(a)(2) because CFC is not a "building commissioner, municipal counsel or other appropriate authority of the municipality , or any adjacent or neighboring property owner who would be specially damaged" by the imposition of this proposed hospital planned development. Even if this statute purports to restrict the persons who can maintain a cause of action for violations of a zoning ordinance, we conclude that the law as it stands in Tennessee permits CFC to bring an action on behalf of its members. Notwithstanding the absence of injury to itself, an organization may have standing solely as the representative of its members. *Rains v. Knox County Board of Commissioners*, C.A. No. 711, 1987 WL 18065, at *1 (Tenn. Ct. App. Oct. 9, 1987); *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy. *Id.*; *see also Sierra Club v. Morton*, 405 U.S. 727 (1972). The organization must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. *Rains*, 1987 WL 18065, at * 1; *Sierra Club*, 405 U.S. 727, at 734-741.

In this case, the requirements of a justiciable controversy are present. CFC was organized and incorporated for the express purpose of protecting residential property in Collierville from alterations in the zoning or use of such property. Many members of CFC have standing to bring the action based on their status as adjacent property owners. CFC has alleged sufficient facts to establish standing in its representative capacity to seek prospective relief for its members, many of whom own single family residential property

4

within 2000 feet of the proposed planned development. Based on the foregoing, we conclude that CFC has standing to sue in its representational capacity.

## Standard of Review

Common law writ of certiorari is provided for in T.C.A. § 27-8-101:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Review under the common law writ is limited to whether the "inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently." *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990)(quoting *Hoover Motor Exp. Co. v. Railroad and Public Utilities Commission*, 195 Tenn. 593, 604, 261 S.W.2d 233, 238 (Tenn 1953)). This Court's primary resolve is to refrain from substituting its judgment for that of the local governmental body. *McCallen*, 786 S.W.2d, at 641. An action should be invalidated only if it constitutes an abuse of discretion. If any possible reason exists to justify the action, such action should be upheld. Both legislative and administrative decisions are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action. An invalidation of the action of an "inferior tribunal, board, or officer exercising judicial functions" should take place only when the decision is clearly illegal, arbitrary, or capricious.

## Whether the Board of Mayor and Aldermen acted illegally, arbitrarily, or capriciously in their validation of BMH's application for the proposed planned development.

A planned development is authorized by 11-1102 of the Collierville Regulations for Planned Developments. The objectives of this section are as follows:

> The Board of Mayor and Aldermen may, upon proper application, grant a special permit for a Planned Development for a site of at least ten (10) acres to facilitate the use of flexible techniques of land development and site design by providing relief from zone requirements designed for conventional developments. In addition, the Board may establish standards and procedures to ensure uses compatible to the area surrounding the development prior to the issuance of a Special Use Permit in order to obtain one or more of the following objectives:
>
> A. Promote flexibility in design and permit planned diversification in the location of structures.

5

B. Promote the efficient use of land to facilitate a more economic arrangement of buildings, circulation systems, land use and utilities.

C. Preserve to the greatest extent possible existing landscape features and amenities and to utilize such features in a harmonious fashion.

D. Provide for more usable and suitably located recreation facilities and other public and common facilities than would otherwise be provided under conventional land development procedures.

E. Continue and coordinate architectural styles, building forms and building relationships within the planned developments.

F. Insure a quality of construction commensurate with other developments within the city.

G. Creation of a safe and desirable living environment for residential area characterized by a unified building and site development program.

H. Rational and economic development in relation to public services.

I. Efficient and effective traffic circulation both within and adjacent to the development site.

J. Creation of a variety of housing compatible with surrounding neighborhoods to provide a greater choice of types of environment and living units.

K. Provision in attractive and appropriate locations for business and manufacturing uses in well-designed building and provision of opportunities for employment closer to residence with a reduction in travel time from home to work._____

General standards and criteria for planned developments are set forth in section 11-1105

of the Town of Collierville's zoning ordinance. It provides:___

11-1105. General Standards and Criteria

_____The Board of Mayor and Aldermen may grant a permit which modifies the applicable district zoning regulations and subdivision regulations upon written findings and recommendations by the Planning Commission which shall be forwarded pursuant to the provisions contained in this section.

A. The proposed development will not unduly injure or damage the use, value and enjoyment of surrounding property nor unduly hinder or prevent the development of surrounding property in accordance with the current development policies and Collierville Comprehensive Plan.

B. An approved water supply, community waste water treatment and disposal and storm water drainage facilities that are adequate to serve the proposed development have been or shall be provided.

C. The location and arrangement of the structures, parking areas, walks, lighting and other service facilities shall be compatible with the surrounding land uses and any part of the proposed development not used for structures, parking and loading area or access ways shall be landscaped or otherwise improved except where natural features are such as to justify preservation.

D.  Any modification of the zoning or other regulations that would otherwise be applicable to the site are warranted by the design of the preliminary development plan and the amenities incorporated therein, and are not inconsistent with the public interest.

E.  Homeowner' associations or some other responsible party shall be required to maintain any and all common and open space and/or common elements, unless conveyed to a public body which agrees to maintain.

In *McCallen v. City of Memphis*, the court dealt with an ordinance that is virtually identical to 11-1105. *McCallen*, 786 S.W.2d, at 635, 636. The *McCallen* court concluded that these general standards and criteria must be met before a planned development is approved. *McCallen*, 786 S.W.2d, at 635. We agree and conclude the record contains sufficient evidence of these criteria to support the Town of Collierville's approval of BMH's application for the planned development at issue in this cause.

BMH applied for a planned development for a hospital and medical campus on 96.094 acres at the corner of Shea and Poplar in Collierville, Tennessee, with approximately 20 acres lying on the east side of Shea. The development was proposed in an area classified as a R-1 low density residential zone and generally surrounded by residential homes.

The planning maps illustrate BMH's strong intent to maintain the atmosphere and integrity of the surrounding residential areas. BMH's preliminary development plan proposes a hospital at the northwest corner of Poplar and Shea within the area designated "A" on the planning maps. The hospital would be comprised of 3 stories and is proposed to be setback 250 feet from Shea and 150 feet from Poplar with a maximum height of 45 feet. BMH also proposes a minimum 100 foot wide area along Shea to be preserved with the existing mature vegetation and an additional 150 foot wide screen to preserve the residential character of Shea.

The area west of the hospital is designated area "B" and is proposed for a 2 story medical office building. BMH proposes a minimum 100 foot setback from Poplar and a 200 foot wide area along the western property line to be preserved and incorporated as a part of the Town of Collierville Greenbelt Plan. Building heights are to be no more than 2 stories.

7

Area "C" east of Shea is proposed for 1 and 2 story medical offices with the one story building being restricted to the northern portion of the site adjacent to the Pembroke Subdivision. A minimum setback of 100 feet from Poplar, 75 feet from Shea, 60 feet from the northern property line and 40 feet from the eastern property line is proposed. Maximum building height for the building(s) within 200 feet of the northern rim of area C is 1 story and maximum height for the remaining property within area C is 2 stories. Also proposed for acceptance is a 7 foot brick wall bordering the northern edge of this area with evergreens planted on both sides of the fence.

Within area "D," BMH proposes a tier of 6 single family lots along the west side of Shea to be consistent with the one acre lots on the east side of Shea in the Pembroke subdivision. Minimum lot frontage is proposed to be 150 feet, and minimum lot area is 1 acre. Minimum front yard building setback from Shea is 80 feet. Minimum ground floor area is proposed to be 3500 square feet.

The area north of the hospital is designated as area "E." This area is proposed for uses such as medical offices, a wellness center, ambulatory care facilities and elderly assisted living with substantial open space to provide a compatible relationship with residential uses north of this site. A minimum setback of 60 feet from the northern property line has been proposed. BMH proposes a 300 foot wide area along the western property line to be preserved and incorporated as a part of Collierville's Greenbelt Plan. Maximum building height within 200 feet of the northern property line is proposed to be 1 story. The remaining property within area E has a proposed maximum height of 2 stories. The maximum amount of medical and related office building area is 100,000 square feet.

Within all these areas, a considerable amount of landscaping and road improvements are proposed by BMH in order to provide compatibility to surrounding developments in the area. To further enhance the neighborhood/community-like setting of the development, a premium is placed on the preservation of the natural tree cover and other unique characteristics of the landscape. In addition, many new trees will be planted to provide an atmosphere conducive to the residential nature of the surrounding areas.

8

The Commission and planning staff also formulated some conditions concerning water and sewer drainage, signage, landscaping and screening, and right-of-way, access and circulation. These conditions were met with approval by BMH.

Facts were presented to the Planning Commission and to the Board of Mayor and Aldermen by Ralph Smith, the consultant from ETI Corporation, in support of the application by BMH. The reasons for Mr. Smith's support were as follows: the significant amount of landscaping proposed and large buffer zones implemented into the plan by BMH in order to enhance compatibility with surrounding developments, the road improvements and traffic light additions proposed to accommodate the increased traffic flow, and the extensive traffic study submitted by BMH and prepared by Haynie Associates indicating that the area surrounding the proposed hospital could accomodate traffic capacity requirements through the year 2010. Particularly, Mr. Smith stated:

> There are some general standards and criteria that we must meet that are provided in the PUD ordinance to permit our request for a hospital and medical center community. We believe that with the siting of the buildings, the setbacks, the height limitations, the quantity limitations that we have, the screening, the landscaping, Shea Road improvements, and Shea Road design, the PUD is compatible with the surrounding development and will not hinder other development in the area in accordance with the Collierville Comprehensive Plan . . . [t]he Planning Commission has made a recommendation and stated some conditions. The staff has also proposed some conditions. We are in agreement with all of these. With all the conditions and requirements, we find that the Planned Unit Development is compatible and consistent with the character of the surrounding area. . . [t]he zoning modifications we've requested under the PUD ordinance with the amenities incorporated into the plan are consistent with the public interest, and also the common open-space landscaping, screening, and streetscape will be maintained by the property owner.

Certain residents voiced their support for the proposed hospital and expressed that the development would be an asset to the community. Particularly, these residents verbalized how a hospital would increase their quality of life and fulfill a long awaited need of convenient medical care.

As mentioned above, an extensive traffic study was performed by Haynie Associates for BMH. This study established that, in 1996, the segment of Poplar adjacent

to Shea had an average daily traffic volume of 39,095. The data accumulated from this study indicated that the surrounding street system adjacent to the proposed hospital will have the capacity in the design year 2010 to accomodate the medical campus at the proposed location. Further, the traffic study recognized that Collierville's implementation of their major road plan, as evidenced by the planned construction of Winchester Road Extended and Nonconnah Parkway, would relieve the need for Poplar to be the primary major facility carrying east/west traffic. Additionally, the study evinced that improvements to Shea would bolster it sufficiently to exceed the travel desires that are anticipated along Shea beyond the year 2010.

Acknowledging their hesitance in providing support to the planned hospital, certain citizens expressed their opposition to the project. Crime, traffic congestion, property tax increases, property tax revenue decreases and incompatibility with surrounding residential uses were among the reasons stated for their opposition. There is little in the record to evince that the proposed planned development would result in the alleged harm to the nearby property.

Inherent in the nature of zoning is that often particular persons receive benefits while others are harmed. However, such a result does not invalidate a planned development unless the development is clearly arbitrary, capricious or illegal. *See McCallen*, 786 S.W.2d, at 642. Like *McCallen*, it is evident that the circumstances of this case do not warrant the invalidation of the act of the Board of Mayor and Aldermen in approving BMH's application for a planned development at the corner of Poplar and Shea. In light of the foregoing, there was sufficient evidence that all of the general standards and criteria for planned developments were met by the Commission and the Board of Mayor and Aldermen. Indeed, the Commission made sufficient factual determination that Appellees had met the pre-established guidelines for planned developments and approved BMH's application. CFC tendered a good challenge to the planned development, and there was evidence from which the Board of Mayor and Aldermen could have denied the application. We conclude, however, that CFC failed to carry its burden of proof that the Board of Mayor and Aldermen's actions were arbitrary, capricious or unreasonable. Without such proof, we do not find the Board's favorable ruling to be illegal, arbitrary or capricious.

We affirm the judgment of the trial court.  Costs of this appeal are assessed against CFC, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.