IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2014 Session

## UNION COUNTY EDUCATION ASSOCIATION v. UNION COUNTY BOARD OF EDUCATION

**Appeal from the Chancery Court for Union County**
**No. 6368     Andrew R. Tillman, Chancellor**

---

**No. E2013-02686-COA-R3-CV-FILED-AUGUST 28, 2014**

---

A Union County schoolteacher was twice interviewed by school administrators in an investigation of charges regarding the teacher's alleged improper conduct. Both times, the teacher's request to have a representative from the Union County Education Association ("the Association") present with him for the investigatory interview was denied. After the investigation was complete, the teacher was not disciplined and no adverse action was taken against him. The Association brought this action alleging that the Union County Board of Education ("the Board"), acting through its agents, violated the Professional Educators Collaborative Conferencing Act of 2011 ("the Collaborative Conferencing Act"), Tenn. Code Ann. § 49-5-603 (2013), which provides that "[p]rofessional employees have the right to self-organization, to form, join or be assisted by organizations, to participate in collaborative conferencing . . . and to engage in other concerted activities for the purpose of other mutual aid and benefit. . . ." The Association sought a declaratory judgment that the Board's refusal to allow the teacher to have a representative present was an unlawful act under Tenn. Code Ann. § 49-5-606. The trial court granted the Board summary judgment on the ground that the Association "had no injury in fact and therefore lacked standing to proceed with this action." We hold that the rights provided to professional employees under section 603 of the Collaborative Conferencing Act include the right to have a representative of his/her organization present, upon the employee's request, at an investigative interview where the employee reasonably believes the investigation may result in disciplinary action against him or her. We further hold that the Association has standing to pursue this action. Consequently, we vacate the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Richard L. Colbert and Courtney L. Wilbert, Nashville, Tennessee, for the appellant, Union County Education Association.

Mary Ann Stackhouse and Janet Strevel Hayes, Knoxville, Tennessee, for the appellee, Union County Board of Education.

**OPINION**

I.

In April of 2012, the schoolteacher,[1] who was working in the Union County school system, was summoned to a meeting with administrative officials for the purpose of addressing and investigating allegations of misconduct by the teacher that had been made by students. The teacher, a member of the Association, requested that he be accompanied to the meeting by a representative of the Association. Susan Oaks, a supervisor of instruction with Union County schools, conducted the investigation. When Ms. Oaks arrived for the meeting, two others were present with the teacher – a fellow teacher from the same school, and a representative from the Association. Ms. Oaks, acting on the direction of the Union County director of schools, told the teacher that the others would not be allowed to be present with him during the meeting. He was alone with Ms. Oaks and the acting principal of the school for the first investigatory interview. Ms. Oaks described the allegations that had been made against the teacher, reading certain written statements that had been provided by students, and asked the teacher to provide a written statement in response. They scheduled a second meeting where Ms. Oaks would pick up the teacher's response and provide him with typed copies of the students' statements with their names redacted. When Ms. Oaks arrived for the second meeting, the same two individuals were with the teacher. He again asked that they be allowed to be present at the meeting. Ms. Oaks again declined his request.

Ms. Oaks passed the information she gathered from the investigation to the director of schools, who made the decision regarding what to do about the misconduct allegations. Ultimately, the teacher did not receive any discipline or other adverse action resulting from the investigation.

The Association filed this action on July 12, 2012, alleging that the Board violated the Collaborative Conferencing Act by refusing the teacher's requests to be accompanied by an

---

[1]The name of the schoolteacher has been redacted throughout the record on appeal. The Board's brief explains that the Board "has, throughout the investigation and subsequent litigation, attempted to handle the complaints with professionalism and sensitivity. Accordingly, the Board of Education is not disclosing the identity of the teacher at issue." We agree with this approach.

Association representative. The trial court granted summary judgment to the Board on the sole ground that the Association lacked standing. The Association timely filed a notice of appeal.

## II.

The issue is whether the trial court correctly granted summary judgment to the board based upon the court's determination that the Association had no injury in fact and therefore lacked standing to proceed with this lawsuit. This issue requires us to address these interrelated questions: (1) whether Tenn. Code Ann. § 49-5-603 provides a professional employee the right to have a representative of his/her organization present, upon the employee's request, at an investigative interview where the employee reasonably believes the investigation may result in disciplinary action against him or her; and (2) whether the Association has met the requirements to establish its "organizational" or "associational" standing to bring this action on behalf of its members. These are questions of law that we review de novo. *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013) ("Interpretations of statutes involve questions of law which the appellate courts review de novo without a presumption of correctness"); *Dossett v. City of Kingsport*, 258 S.W.3d 139, 143 (Tenn. Ct. App. 2007) ("A trial court's determination of whether a party has standing to pursue a cause of action is a conclusion of law."). This appeal presents no disputed issues of material fact.

## III.

The teacher is not a party to this action. The Board argues that any rights provided to professional employees under the Collaborative Conferencing Act are given to individuals only, not teacher associations such as the Association. As a consequence, the Board asserts that the trial court correctly determined that the Association did not have standing to file this lawsuit. The Association argues that the Board clearly violated the Collaborative Conferencing Act, which specifically provides for the remedy the Association seeks – (1) a judgment that the Board acted unlawfully in refusing the teacher's requests for assistance in the interview, and (2) an order that the Board cease and desist from such unlawful acts. *See* Tenn. Code Ann. § 49-5-606(c). The Association further contends that it has standing to bring this action on behalf of its members under the doctrine of organizational standing. This doctrine, as will be discussed further below, recognizes that "[n]otwithstanding the absence of injury to itself, an organization may have standing solely as the representative of its members." *Citizens for Collierville, Inc. v. Town of Collierville*, 977 S.W.2d 321, 323 (Tenn. Ct. App. 1998).

The doctrine of standing – " 'a judge-made doctrine which has no per se recognition in the rules,' is essential for a resolution on the merits of a legal controversy." *Fannon v. City of LaFollette*, 329 S.W.3d 418, 424 (Tenn. 2010) (quoting *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). The Supreme Court has recently reiterated the general principles governing a standing analysis as follows:

> Courts use the doctrine of standing to determine whether a litigant is entitled to pursue judicial relief as to a particular issue or cause of action. *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). The proper focus of a determination of standing is a party's right to bring a cause of action, and the likelihood of success on the merits does not factor into such an inquiry. *Darnell*, 195 S.W.3d at 620; *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767-68 (Tenn. Ct. App. 2002). Every standing inquiry requires a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).
>
> Our jurisprudence recognizes two categories of standing that govern who may bring a civil cause of action: non-constitutional standing and constitutional standing. Non-constitutional standing focuses on considerations of judicial restraint, such as whether a complaint raises generalized questions more properly addressed by another branch of the government, and questions of statutory interpretation, such as whether a statute designates who may bring a cause of action or creates a limited zone of interests. Constitutional standing, the issue in this case, is one of the "irreducible . . . minimum" requirements that a party must meet in order to present a justiciable controversy.
>
> To establish constitutional standing, a plaintiff must satisfy "three 'indispensable' elements." *Darnell*, 195 S.W.3d at 620 (quoting *Petty*, 91 S.W.3d at 767). First, a party must show an injury that is "distinct and palpable"; injuries that are conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general citizenry are insufficient in this regard. *Id.* Second, a party must demonstrate

-4-

a causal connection between the alleged injury and the challenged conduct. *Id.* (citing *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001)). While the causation element is not onerous, it does require a showing that the injury to a plaintiff is "fairly traceable" to the conduct of the adverse party. *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)). The third and final element is that the injury must be capable of being redressed by a favorable decision of the court.

*City of Memphis v. Hargett*, 414 S.W.3d 88, 97-98 (Tenn. 2013) (footnote and some internal citations omitted).

Regarding the organizational standing doctrine, this Court has recognized that,

[w]hen an individual brings an action, he must show that he has a personal stake in the outcome that would be greater than the general public. An organization, on the other hand, generally has standing to bring suit on behalf of its members for prospective relief, such as a declaratory judgment action, even if it has not suffered injury, if it alleges sufficient facts to establish a case or controversy had the members themselves brought suit.

*Rains v. Knox Cnty. Bd. of Commissioners,* No. 711, 1987 WL 18065 at *1 (Tenn. Ct. App. W.S., filed Oct. 9, 1987). In *ACLU of Tenn. v. Darnell*, the Supreme Court recognized the following test for organizational standing, adopted by this Court in *Curve Elementary Sch. Parent & Teacher's Org. v. Lauderdale Cnty. Sch. Bd.*, 608 S.W.2d 855, 858 (Tenn. Ct. App. 1980) and initially set forth by the United States Supreme Court in *Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333, 343 (1977):

To establish standing, an association . . . must show that: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

*Darnell*, 195 S.W.3d at 626. In *Hunt*, the U.S. Supreme Court observed that courts are more likely to find organizational standing when the nature of the relief sought is prospective:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. *If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.* Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

432 U.S. at 343 (quoting *Warth v. Sedlin*, 422 U.S. 490, 515 (1975)) (emphasis added).

Where the source of the cause of action is statutory, as in the present case, we must closely examine the statute to determine if it may be interpreted as granting a plaintiff the right to judicial relief:

> When the claimed injury involves the violation of a statute, the court must determine "whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."

*Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992).

The Association argues that the Collaborative Conferencing Act grants professional employees, upon request, the right to have a representative of his/her association present at an interview where the employee reasonably believes the investigation may result in disciplinary action against him or her. The Board disagrees, arguing that the Act provides no such right to employees, and therefore the Association has no organizational standing because it cannot demonstrate the first prong of the test – that "its members would otherwise have standing to sue in their own right." *Darnell*, 195 S.W.3d at 626. The right at issue here has become known as a "*Weingarten* right" because it was first recognized by the U.S. Supreme Court in the case of *NLRB v. J. Weingarten, Inc.,* 420 U.S. 251 (1975). In *Weingarten*, the Court affirmed the National Labor Relations Board's decision that an "employer's denial of an employee's request that her union representative be present at an investigatory interview which the employee reasonably believed might result in disciplinary action constituted an unfair labor practice" under the National Labor Relations Act ("NLRA"). *Id.* at 252. The *Weingarten* Court held that the right to have a union representative present was provided by section 7 of the NLRA, which provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities . . .

29 U.S.C.A. § 157.

Three years after *Weingarten*, the Tennessee General Assembly enacted the Education Professional Negotiations Act ("EPNA"), which included the following nearly identical provision in EPNA's section 7:

> Professional employees shall have the right to self-organization, to form, join, or be assisted by organizations, to negotiate through representatives of their own choosing, and to engage in other concerted activities for the purpose of professional negotiations or other mutual aid or protection; Provided, professional employees shall also have the right to refrain from any or all such activities.

Tenn. Pub. Acts 1978, ch. 570, § 7 (originally codified at Tenn. Code Ann. § 49-5506 and later recodified at § 49-5-603). This provision remained unchanged until 2011, when the legislature repealed EPNA and replaced it with the Collective Conferencing Act. Tenn. Code Ann. § 49-5-603 currently provides as follows:

> Professional employees have the right to self-organization, to form, join *or be assisted by organizations*, to participate in collaborative conferencing with local boards of education through representatives of their own choosing *and to engage in other concerted activities for the purpose of other mutual aid and benefit*; provided, that professional employees also have the right to refrain from any or all such activities.

(Emphasis added.)

The U.S. Supreme Court's *Weingarten* ruling applies to private-sector employees. In 1978, Congress extended the *Weingarten* right to federal public-sector employees. *See* 5 U.S.C.A. §§ 7101(b), 7114(2). It appears that a substantial majority of jurisdictions considering whether the *Weingarten* right is recognized for state public-sector employees

under state law have concluded that it is. *See, e.g., **City of Clearwater (Fire Dept.) v. Lewis***, 404 So.2d 1156, 1160 (Fla. Dist. Ct. App. 1981); ***City of Marion v. Weitenhagen***, 361 N.W.2d 323, 327-28 (Iowa Ct. App. 1984); ***Mass. Corr. Officers Fed. Union v. Labor Relations Comm'n***, 675 N.E.2d 379, 380 (Mass. 1997); ***Wayne-Westland Educ. Ass'n v. Wayne-Westland Cmty. Schools***, 439 N.W.2d 372, 373 (Mich. Ct. App. 1989); ***In re Univ. of Med. & Dentistry of N.J.***, 677 A.2d 721, 729-30 (N.J. 1996); ***Cleveland Ass'n of Rescue Employees v. State Employment Relations Bd.***, 730 N.E.2d 426, 431 (Ohio Ct. App. 1999); ***Commonwealth v. Penn. Labor Relations Bd.***, 916 A.2d 541, 548 (Pa. 2007); ***Warwick Sch. Comm. v. State Labor Relations Bd.***, No. 79-2170, 1980 WL 336101 at \*2-3 (R.I. Super. Apr. 23, 1980). The few state courts that have decided their state law does not protect its public employees with the ***Weingarten*** right have done so on the ground that their respective statutes are worded substantially dissimilarly to the NLRA. *See **In re N.Y City Transit Auth. v. State Pub. Employee Relations Bd.***, 864 N.E.2d 56, 58 (N.Y. 2007); ***City of Round Rock v. Rodriguez***, 399 S.W.3d 130, 135 (Tex. 2013).

As we have noted, Tenn. Code Ann. § 49-5-603 is very similar to, and was clearly modeled after, section 7 of the NLRA. Thus, although the NLRA is not applicable to this case, and the ***Weingarten*** opinion is not binding, we consider them to be highly informative and persuasive. We presume the General Assembly was aware of the state of the law, including the ***Weingarten*** decision, when it enacted the EPNA in 1978 and the Collaborative Conferencing Act in 2011. ***Lavin v. Jordon***, 16 S.W.3d 362, 368 (Tenn. 2000) ("We are not inclined to concede the extreme similarity in language to mere coincidence, because the 'Legislature is presumed to know the state of the law on the subject under consideration at the time it enacts legislation.' ").

In determining that the ***Weingarten*** "right inheres in § 7's guarantee of the right of employees to act in concert for mutual aid and protection," 420 U.S. at 256, the U.S. Supreme Court reasoned as follows:

> The action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording of § 7 that "[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection." ***Mobil Oil Corp. v. NLRB***, 482 F.2d 842, 847 (CA7 1973). This is true even though the employee alone may have an immediate stake in the outcome; he seeks "aid or protection" against a perceived threat to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire

bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly. The representative's presence is an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview. Concerted activity for mutual aid or protection is therefore . . . present here[.]

*Id.* at 260-61 (footnote omitted). The High Court further observed that the ***Weingarten*** right provides potential benefits not only to the employee and his or her union or association, but also to the employer:

The Board's construction also gives recognition to the right when it is most useful to both employee and employer. A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview. Certainly his presence need not transform the interview into an adversary contest.

*Id.* at 262-63 (footnote omitted). The New Jersey Supreme Court has reasoned similarly, stating:

There are other policy justifications for granting New Jersey public employees the protection of the ***Weingarten*** rule. As one commentator has explained, an investigatory interview of an employee often entails an atmosphere of isolation and intimidation of the employee. *See* Anthony R. Baldwin, *Weingarten and the Taylor Law—A Claimed Difference Without Distinction*, 7 Hofstra Lab. L.J. 123, 127-29 (1989). In such a setting, employees may be less than articulate in attempting to defend themselves. Employees may not realize that they could exonerate themselves through recounting to the employer certain mitigating circumstances. Thus, an employee's defense may be less than compelling, squandering the last chance of exculpation before punishment is delivered.

*In re Univ. of Med. & Dentistry of N.J.*, 677 A.2d at 729.

The Collaborative Conferencing Act specifically enumerates the following rights given to professional employees under the Act: (1) to self-organization; (2) to form, join *or be assisted by organizations*; (3) to participate in collaborative conferencing . . . through representatives of their own choosing; and (4) *to engage in other concerted activities for the purpose of other mutual aid and benefit.* (Emphasis added). We observe that the second right – "to be assisted by organizations" – is arguably more strongly worded in employees' favor than the NLRA, which gives employees the right to "assist labor organizations." Giving the words "to be assisted by organizations" their plain and ordinary meaning, the activity at issue here, a request for assistance from an organization representative in an investigatory interview, is encompassed by this clear and unambiguous language of Tenn. Code Ann. § 49-5-603.

Moreover, as the *Weingarten* Court similarly held, the right also clearly falls within the literal wording of the Act giving employees the right "to engage in other concerted activities for the purpose of other mutual aid and benefit." Neither the Collaborative Conferencing Act nor the NLRA defines "concerted activities." After *Weingarten*, the U.S. Supreme Court further explored the meaning of this phrase in *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 830-31 (1984), stating:

> The term "concerted activit[y]" is not defined in the Act but it clearly enough embraces the activities of employees who have joined together in order to achieve common goals.
>
> \*     \*     \*
>
> Although one could interpret the phrase, "to engage in concerted activities," to refer to a situation in which two or more employees are working together at the same time and the same place toward a common goal, the language of § 7 does not confine itself to such a narrow meaning. In fact, § 7 itself defines both joining and assisting labor organizations – activities in which a single employee can engage – as concerted activities.

When an employee asks to exercise his or her *Weingarten* right to have assistance under the appropriate circumstances, "two or more employees" – the interviewed employee, the assisting association representative, and, in a broader sense, the association itself – "are working together at the same time and the same place toward a common goal" – ensuring that

all information pertinent to the investigation is made known to the employer, and that the employee is not treated in a manner that unfairly impinges on his or her rights. Therefore, even under the more restricted definition that the High Court in *City Disposal Systems* described as too "narrow" to fully encompass "concerted activity," the activity at issue here qualifies. We hold that the Collaborative Conferencing Act provides the right to have an organizational representative present, upon the professional employee's request, at an investigative interview where the employee reasonably believes the investigation may result in disciplinary action against him or her.

Tenn. Code Ann. § 49-5-606(a)(2) provides that "[i]t is unlawful for a board of education or its management personnel to: . . . [i]nterfere with, restrain or coerce employees in the exercise of the rights guaranteed in § 49-5-603." Section 606(c) provides a judicial remedy for such an unlawful act:

> (1) A complaint of an unlawful act shall be filed with, or initiated by the board of education. If no reasonable resolution is reached between the parties, a complaint may be filed in the chancery court of the county where the local education agency is located.
>
> *     *     *
>
> (3) The court is empowered to prevent any board of education or its agents, or organizations, associations, professional employees, or their agents, from engaging in any unlawful act.
>
> (4) If, upon the preponderance of the evidence taken, the court is of the opinion that a party named in the complaint *has engaged in* or is engaging in any such unlawful act, then the court shall state its findings of fact, issue an order requiring the party to cease and desist from the unlawful act, and take affirmative action including resumption of collaborative conferencing or reinstatement of employees. The order may further require the party to make reports from time-to-time showing the extent to which it has complied with the order.

(Emphasis added.)

We are of the opinion that the fact that the teacher was not disciplined as a result of the investigation is immaterial. The employee was injured, under the express terms of the

statute, when the Board interfered with and restrained his ***Weingarten*** right to be assisted by the Association and to engage in concerted activity for mutual aid or benefit. No further injury is required to convey standing to seek the remedy established by the statute. Thus, the Association has established the first prong of the organizational standing test by showing that its members would otherwise have standing to sue in their own right.

We have no hesitancy in finding that the Association has also met the second prong by showing that "the interests it seeks to protect are germane to the organization's purpose." Clearly, a primary purpose of the Association is to act collectively, or in a concerted effort, for the mutual aid, benefit, and protection of its members. In ***International Union, United Auto., Aerospace & Ag. Implement Workers of Am. v. Brock***, 477 U.S. 274 (1986), the Court addressed the question of "whether the UAW may proceed solely as a representative of those of its members injured," stated that "[i]t has long been settled that [e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members," ***Id.*** at 281, and further observed as follows:

> [T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. "The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all." The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests.

***Id.*** at 290 (internal citations omitted).

Our review of the record and the Collaborative Conferencing Act establishes that the third and final prong of the organizational standing test has been met, because "neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." ***Darnell***, 195 S.W.3d at 626. The statute, which expressly provides the right "to be assisted by organizations," does not require individual participation. As we have noted, the issue presented is one of law, and the relief requested is prospective and declaratory in nature, as provided by the statute. As the Missouri Supreme Court recently observed,

> Where an association seeks only a prospective remedy, it is presumed that the relief to be gained from the litigation "will

inure to the benefit of those members of the association actually injured." [***Hunt***, 422 U.S.] at 515. Accordingly, requests made by an association for prospective relief generally do not require the individual participation of the organization's members. Conversely, where an association seeks a remedy such as money damages, the participation of its individual members is necessary to determine the particular damages to which each affected member is entitled.

***St. Louis Ass'n of Realtors v. City of Ferguson***, 354 S.W.3d 620, 624 (Mo. 2011) (internal citation omitted).

The Board argues that because the subject at issue here, the investigation of allegations of teacher misconduct and potential discipline, is not a term or condition of employment that is subject to the Act's collaborative conferencing requirement, the Association cannot have the right to take action to vindicate a member's ***Weingarten*** right. Tenn. Code Ann. § 49-5-608 sets forth a list of terms and conditions of employment that are subject to the collaborative conferencing requirement, providing as follows:

(a) A local board of education shall be required to participate in collaborative conferencing with professional employees, or their designated representatives, if any, with respect to only those terms and conditions of employment that are specified in this section. Such terms and conditions include and are limited to the following:
(1) Salaries or wages;
(2) Grievance procedures;
(3) Insurance;
(4) Fringe benefits, but not to include pensions or retirement programs of the Tennessee consolidated retirement system or locally authorized early retirement incentives;
(5) Working conditions; except those working conditions which are prescribed by federal law, state law, private act, municipal charter or rules and regulations of the state board of education, the department of education or any other department or agency of state or local government;
(6) Leave; and
(7) Payroll deductions; except as provided in subsection (b).
(b) No other terms or conditions of employment shall be the subject of collaborative conferencing between the board of

education and the professional employees or their representatives . . .

It is undisputed that the Act does not require collaborative conferencing on the subject at issue here. But section 603 provides professional employees rights *additional to* collaborative conferencing, stating that they "have the right to . . . participate in collaborative conferencing . . . *and* to engage in *other concerted activities* for the purpose of other mutual aid and benefit." (Emphasis added). The legislature's use of the term "other" indicates its intent to recognize the right to engage in concerted activity in addition to collaborative conferencing, such as the *Weingarten* right discussed herein.

The Board also argues that Tenn. Code Ann. § 49-5-608(5)(c), which provides that "[t]he director of schools shall be permitted to communicate with professional employees employed by the local board of education concerning any subject relevant to the operation of the school system, including the terms and conditions of professional service that are subject to collaborative conferencing, through any means, medium or format the director chooses," precludes the Association from having standing to bring this action. The right of a director of schools to communicate with professional employees is not relevant to the question presented here, however, and does not preclude a holding that an employee has a concomitant *Weingarten* right that can be enforced – under the Collaborative Conferencing Act – by action of the Association.

IV.

In summary, we hold that the rights provided to professional employees under section 603 of the Collaborative Conferencing Act include the *Weingarten* right to have an organizational representative present, upon the employee's request, at an investigative interview where the employee reasonably believes the investigation may result in disciplinary action against him or her. We further hold that the Association has organizational standing to pursue this action on behalf of its members. The judgment of the trial court is vacated, and the case remanded for further action consistent with this opinion. Costs on appeal are assessed to the appellee, Union County Board of Education.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

-14-